UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DANIEL P.,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 5:25-CV-056-H

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

The United States Magistrate Judge made Findings, Conclusions, and a Recommendation (FCR) on July 21 regarding the final adverse decision of the Commissioner of Social Security. Dkt. No. 23. She recommended that the Court affirm the Commissioner's decision. *Id.* at 22. Daniel P. filed his objections to the FCR. Dkt. No. 24. For the reasons stated below, the Court accepts and adopts the FCR (Dkt. No. 23), affirms the Commissioner's decision, and dismisses this case.

## 1. Factual and Procedural Background

In February 2023, Daniel P. filed an application for disability-insurance benefits. Dkt. No. 10-1 at 21. The Social Security Administration denied his claims initially and upon reconsideration. *Id.* After these denials, Daniel P. requested a hearing. *Id.* The administrative law judge (ALJ) held a telephonic hearing in August 2024, with an impartial vocational expert and Daniel P.—represented by his attorney—both testifying. *Id.* After the hearing, the ALJ determined that Daniel P. was not disabled. *Id.* at 33.

To reach his determination, the ALJ conducted the five-step sequential evaluation applicable in social-security-disability cases. *Id.* at 23–33; *see Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). At step one, the ALJ found that Daniel P. had not engaged in substantial gainful activity since July 2, 2021. Dkt. No. 10-1 at 23. At step two, the ALJ found that he has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, right elbow arthritis, risk ankle neuropathy, psoriatic arthritis, diabetes mellitus, obstructive sleep apnea, obesity, major depressive disorder, and post-traumatic stress disorder. *Id.* At step three, the ALJ found that he did not have an impairment or combination of impairments that are listed in, or equal in severity to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24. At step four, the ALJ found that Daniel P. had the residual functional capacity (RFC) to perform sedentary work, with the following exceptions:

> [Daniel P.] is limited to[] occasional balancing, stooping, kneeling, crouching, and climbing of ramps or stairs; and never crawling or climbing ladders, ropes, or scaffolds. The [plaintiff] can frequently handle, finger, feel, and reach with the bilateral upper extremities. The [plaintiff] can understand, remember, and carry out simple instructions and tasks. The [plaintiff] can tolerate occasional interaction with supervisors, coworkers, and the public.

*Id.* at 27. Finally, at step five, the ALJ found that even though Daniel P. could not perform any past relevant work, he is capable of performing work in the national economy. *Id.* at 31–32. Accordingly, the ALJ found that Daniel P. was not disabled. *Id.* at 32–33.

Daniel P. requested review of the ALJ's decision from the Social Security Appeals Council. *Id.* at 5. The Appeals Council denied his request for review. *Id.* As a result, he appealed to this Court for review of the ALJ's decision. Dkt. No. 1. Daniel P. filed a brief in support of his appeal (Dkt. No. 11), the Commissioner responded (Dkt. No. 21), and Daniel P. replied (Dkt. No. 22). United States Magistrate Judge Burch thereafter issued her FCR recommending that the Court affirm the administrative decision. Dkt. No. 23. Daniel P. timely filed objections to the FCR. Dkt. No. 24.

In his appeal before the Magistrate Judge, Daniel P. challenged the ALJ's opinion on two grounds. First, he asserted that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to consider all of his physical and mental limitations. Second, Daniel P. argued that the ALJ's subjective symptom analysis improperly evaluated the available evidence. He objects to the FCR on both grounds.

**2. Legal Standards**

**A. Standards of Review**

While uncontested portions of the FCR are reviewed only for plain error, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1); *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

**B. ALJ Disability Determinations**

In evaluating a disability claim, an ALJ performs a five-step analysis to determine whether: "(1) the claimant is presently working; (2) the claimant has a severe impairment;

(3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler*, 501 F.3d at 447–48 (5th Cir. 2007); *see* 20 C.F.R. § 404.1520.

Judicial review of the Commissioner's decision to deny benefits "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Id.*

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In reviewing de novo an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

In short, the Court's review of an ALJ's decision is "exceedingly deferential." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Brown v. Apfel*, 192 F.3d

492, 496 (5th Cir. 1999) (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)). "Conflicts in the evidence are for the [ALJ] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**3. Analysis**

**A. The RFC is supported by substantial evidence of physical limitations.**

Daniel P. first objects to what he deems the "omission of limitations supported by the record" from the ALJ's RFC and the lack of "explanation for [that] omission." Dkt. No. 24 at 3. In the physical-limitation context, he specifically targets asserted deficiencies in the ALJ's treatment of Daniel P.'s "need to alternate positions or [inability to] regularly lift more than [ten] pounds," as well as his "wrist tenderness, hand and elbow pain, ankle weakness, instability, . . . limited range of motion, back pain and spasms, and limited lumbar range of motion." *Id.* In Daniel P.'s telling, Judge Burch compounded the problem by failing to "identify what evidence supports the specific RFC findings selected," and he accordingly asks the Court to reject the FCR. *Id.* at 3–5.

The Court disagrees. First, Daniel P.'s contention that Judge Burch did not identify the evidence is unsupportable. She clearly identified the evidence. She noted that the ALJ acknowledged the "several conditions that limit[] [Daniel P.'s] ability to work," including psoriatic arthritis, neuropathy, degenerative disc disease, and diabetes mellitus. Dkt. No. 23 at 7. But even despite these limitations, the ALJ "pointed to other evidence . . . showing that [the] [p]laintiff had 'normal gait, strength, and coordination,' as well as normal strength and reflexes, and that [his] ankle brace helped with his ankle pain." *Id.* This evidence included the opinions of two state-agency medical consultants (Drs. Kwun and Rowley) that did not "contain a limitation for [the] [p]laintiff's alleged need to alternate positions"

and did not "reflect that [the] [p]laintiff cannot lift up to [ten] pounds regularly." *Id.* at 8; *see also* Dkt No. 10-1 at 28–30 (citing record sources for the ALJ's findings of normal gait, strength, coordination, and reflexes). The Court takes equal notice of such evidence.

But even if the evidence on which the ALJ relied on is clearly identifiable, Daniel P. maintains that the ALJ did not adequately reconcile conflicting evidence. In particular, Daniel P. argues that the ALJ did not cite a reason for rejecting evidence of his psoriatic arthritis, degenerative disc disease, and ankle issues, and he did not discuss why Daniel P.'s need to alternate positions and his inability to lift more than ten pounds were not limitations incorporated into the RFC. Dkt. No. 24 at 3–4. But in each case, the ALJ clearly and with considerable detail explored each of Daniel P.'s self-described and medically diagnosed conditions—among them psoriatic arthritis, degenerative disc disease, and ankle pain. Dkt. No. 10-1 at 28. And he noted how, despite those conditions, Drs. Kwun and Rowley still "concluded [Daniel P.] can perform the demands of light exertion" and observed "normal motor functioning," even amid "diagnostic evidence of degenerative changes." *Id.* at 30.

Daniel P.'s contention that "there was evidence favorable to [him] that neither the ALJ nor [the Magistrate Judge] gave reasons for rejecting," including evidence of "psoriatic arthritis, degenerative disc disease, and ankle issues," Dkt. No. 24 at 4, overlooks that the ALJ incorporated those conditions into his RFC finding. *See* Dkt. No. 10-1 at 29 ("These limitations are justified in light of the claimant's chronic pain and neuropathy symptoms related to degenerative disc disease, arthritis, and diabetes mellitus. These limitations are also supported by the claimant's ongoing ankle pain with use of a brace."). Daniel P. may disagree with how the ALJ weighed the evidence, but he fails to establish that the ALJ did not explain himself. The ALJ observed that despite "plaque psoriasis," "psoriatic arthritis,"

"right foot pain," "degenerative changes of the lumbar and cervical spine," "sensory neuropathy in the [plaintiff's] right ankle," and "signs of ankylosing spondylitis," Daniel P. "denied weakness, numbness, or motor deficits," "denied experiencing gait instability as part of his ongoing treatment," was "observed to have normal gait," and was also "observed to display normal strength, reflexes, sensation, and coordination." *Id.* at 28 (citing the record).

Considering this evidence, the ALJ found that Daniel P.'s physical conditions "warrant[ed] [the] functional limitations" of sedentary exertion, but his demonstrated normalcy in gait, strength, coordination, handling, fingering, feeling, and reaching did not justify further exertional or postural limitations. *Id.* at 29. This explanation is more than sufficient to explain why the ALJ deemed any further limitation born from Daniel P.'s psoriatic arthritis, degenerative disc disease, and ankle issues unnecessary in light of the evidence. It is also sufficient to explain why Daniel P.'s desired further limitations related to alternating positions and a ten-pound lifting limit are not an explicit part of the RFC, as the ALJ's limitation of a claimant to sedentary work itself restricted Daniel P. to "lifting no more than [ten] pounds at a time" and permitted him a "certain amount of walking and standing" in conjunction with sitting. 20 C.F.R. § 404.1567(a).

Daniel P's objections ultimately sound in a simple disagreement about how best to weigh the evidence. But that is not a proper basis for remand. The Court may not reweigh the evidence. *Brown*, 192 F.3d at 496. Additionally, despite Daniel P.'s invitation, the Court cannot read more into an ALJ's silence concerning certain conflicting evidence than that silence can bear. Administrative records of social security appeal are voluminous series of documents. The ALJ has no obligation to respond to every piece of conflicting evidence

housed there. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."); *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it . . . .").

To be sure, Daniel P. cites *Kelly v. Chater*, 952 F. Supp. 419, 426 (W.D. Tex. 1996), to note that "the law in the Fifth Circuit requires the ALJ to explain his reasons for rejecting evidence favorable to the claimant." Dkt. No. 24 at 4. But his strategic citation of that language omits an important introductory clause. The full quote is instead: "[i]n a different context, the law in the Fifth Circuit requires the ALJ to explain his reasons for rejecting evidence favorable to the claimant." *Kelly*, 952 F. Supp. at 426 (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). That different context is the following: "[W]hen the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain." *Falco*, 27 F.3d at 163 (citing *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988)).

In other words, *Kelly* and *Falco* do not require the ALJ to fastidiously dispense with every single piece of conflicting evidence to avoid reversal and remand. Instead, an ALJ's task is to articulate reasons for rejecting subjective complaints of pain, which the ALJ did here (setting aside whether the evidence of that pain clearly favored Daniel P. or not). *See* Dkt. No. 10-1 at 28. ("I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."); *id.* at 28–

29 (describing treatment with methotrexate for psoriatic arthritis; normal gait, strength, reflexes, sensation, and coordination; Daniel P.'s use of an ankle brace and exercise with a climbing machine; and his ability to use his bilateral upper extremities).

Finally, Daniel P.'s contention that the RFC was formed without medical opinion evidence is simply incorrect. Dkt. No. 24 at 4. The ALJ cited the findings of Drs. Kwun and Rowley. Dkt. No. 10-1 at 30. In sum, the Court finds that the ALJ fulfilled his obligations under the law and supported his RFC findings with substantial evidence.

**B. The RFC is supported by substantial evidence of mental limitations.**

Daniel P. next contends that the ALJ's RFC findings were deficient in their treatment of his mental limitations. Specifically, he asserts that that the RFC's limitation of him "to simple tasks and occasional interactions" does not adequately capture his "documented difficulties with sustaining concentration, regulating emotions, managing stress, and remaining on task during a workday." Dkt. No. 24 at 5.

The record undermines this assertion. Again, although Daniel P. does not couch his argument in such terms, he appears to actually challenge the weight the ALJ assigned the evidence, not the evidence itself—because the ALJ explained himself thoroughly. The ALJ cited the opinions of Drs. Ragsdale and Hightower and to the opinion of consultative examiner Dr. Ritz, and he noted which opinions he found persuasive and where he observed conflicting evidence that justified a departure from their findings. *See, e.g.*, Dkt. No. 10-1 at 30–31.

Additionally, according to Daniel P., Judge Burch "equate[d] the conclusion that [he] can carry out simple instructions and tasks and tolerate occasional interaction with the ability to sustain work on a regular and continuing basis, even though the [ALJ's] Decision

provides no explanation for that conclusion." Dkt. No. 24 at 5. This contention does not survive scrutiny. The ALJ noted Drs. Ragsdale's and Hightower's findings that Daniel P. "can focus on and perform slower-paced simple routine tasks with nominal interactive demands" and "could behave in accordance with general social conventions during brief, task-specific interactions or conversations," and the ALJ expressly remarked that "[t]o the extent [the doctors'] assessment could be construed as more limiting than adapted herein, such an interpretation would be inconsistent with [other] observations of intact concentration and cooperative behavior." Dkt. No. 10-1 at 30 (citing the record). Although it may be disagreeable to Daniel P., this is an explanation of the ALJ's conclusion that further mental limitations were unnecessary.

This conclusion is supported further by the fact that none of the medical opinions the ALJ cited concluded that Daniel P. required further limitations related to off-task behavior, such as extra breaks in the workday. *See* Dkt. No. 23 at 11–12 (citing the record); *see also Christopher G. v. Comm'r, Soc. Sec. Admin.*, No. 4:24-CV-1133, 2026 WL 885479, at *5 (N.D. Tex. Mar. 13, 2026) ("Contrary to [the] [p]laintiff's argument, the record was essentially devoid of any information from which the ALJ could have determined that an off-task time limitation was required, and, if so, how much time off task was necessary. . . . [T]he ALJ reasonably concluded that no off-task time limitations were necessary."), *rep. & rec. adopted sub nom. Garza v. Comm'r, Soc. Sec.*, 2026 WL 884839 (N.D. Tex. Mar. 31, 2026). Moreover, Drs. Ragsdale and Hightower specifically opined that Daniel P.'s limitations "do not prevent [him] from meeting the key mental demands of full-time basic work activity on a regular and continuing basis." Dkt. No. 10-1 at 98, 108.

Next, of particular concern to Daniel P. is how the ALJ treated consultative examiner Dr. Ritz's findings, which, in Daniel P.'s telling, observed "abnormal" mental affects. Dkt. No. 24 at 6; *see also* Dkt. No. 10-2 at 363–366 (Dr. Ritz's report). Of relevance here, Dr. Ritz concluded that Daniel P. "will experience significant difficulty relating effectively to co-workers, supervisors, and the public. He will [also] experience significant difficulty adapting to challenging environments." Dkt. No. 10-2 at 366. Daniel P. contends that the ALJ "fail[ed] to explain why the mental-health specialist's findings were discounted," creating reversible error. Dkt. No. 24 at 6. But that is simply inaccurate. In fact, the ALJ did just the opposite. He discussed Dr. Ritz's opinion at some length but ultimately concluded that her assessment was "perceptively vague as the discussion of significant difficulty is not clearly defined in vocationally relevant terms." Dkt. No. 10-1 at 31. And he considered Daniel P.'s "depression, anger, and suicidal thoughts during [his] encounter [with Dr. Ritz]," but he contrasted them against "observations of the claimant's appropriate and respectful behavior." *Id.*

In combination with his reference to other record findings of Daniel P.'s "cooperative behavior," *id.* at 30 (citing the record), Daniel P.'s self-described respect for authority, *id.* at 25, and evidence of his successful "ongoing treatment" for anger, uncontrolled mood, and anxiety, *id.* at 31, the ALJ sufficiently explained why further mental limitations were unnecessary. As the Magistrate Judge explained, one "can follow the ALJ's logical bridge: [the] [p]laintiff can only have occasional interaction with others due to his mental-health conditions, but a more limited restriction isn't necessary given [the] [p]laintiff's respect for authority, maintenance of a relationship with his friend, appropriate behavior during short spans, and improved mood and behavior with treatment." Dkt. No.

23 at 16. Daniel P. asserts that the ALJ altogether omitted an analysis of Dr. Ritz's findings and that the Magistrate Judge's "logical bridge" conclusion affirmed this error. Dkt. No. 24 at 9. Neither contention is accurate. Daniel P. clearly disagrees with how the ALJ weighed the evidence of his struggles with social interaction, but the power and duty to weigh that evidence lies with the ALJ, not the Court. *Brown v. Apfel*, 192 F.3d at 496; *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). In sum, Daniel P.'s argument that the ALJ did not explain himself is unsupportable, and the Court finds that the RFC is supported by substantial evidence.

**C. The ALJ properly evaluated Daniel P.'s subjective symptoms.**

Finally, Daniel P. contends that the ALJ "discounted" his statements about his subjective symptoms "by selectively relying on isolated normal findings and activities of daily life without explaining how those findings were inconsistent with [the] [p]laintiff's reported limitations." Dkt. No. 24 at 10. Specifically, Daniel P. believes that the evidence on which the ALJ relied insufficiently contradicts his avowed "need to change positions" and his "inabilit[ies] to lift ten pounds, take breaks, and . . . sustain social interactions." *Id.* Judge Burch erred, Daniel P. says, by "defer[ring] to the ALJ's conclusions and [by] characteriz[ing] [the] [p]laintiff's arguments as an attempt to reweigh the evidence" rather than a challenge to the "adequacy of the analysis." *Id.* at 12–13. But the law and record prove otherwise.

The ALJ's task concerning a claimant's report of subjective symptoms is to conduct a two-step evaluation. At step one, he evaluates whether the claimant's medically determinable impairments could reasonably be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). If he finds

that is the case, the ALJ proceeds to step two, where he assesses the intensity and persistence of the claimant's symptoms to determine the extent they impact the claimant's ability to engage in work activities. *Id.* at *4. To conduct this evaluation, the ALJ considers all record evidence and the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate or aggravate the claimant's symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) any treatments other than medication the claimant receives or has received for pain or other symptoms; (6) other measures used to relieve pain or other symptoms; and (7) "[a]ny other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

The ALJ does not have any obligation to mention every factor in performing his analysis. *Undheim v. Barnhart,* 214 F. App'x 448, 450–51 (5th Cir. 2007); SSR 16-3p, 2017 WL 5180304, at *8. Rather, his obligation is to provide "specific reasons for the weight given to the [claimant's] symptoms," to give an opinion that is "consistent with and supported by the evidence," and to "clearly articulate[] [his decision] so the [claimant] and any subsequent reviewer can assess how the adjudicator evaluated the [claimant's] symptoms." SSR l6-3p, 2017 WL 5180304, at *10.

The ALJ met his burden here. He first found "that [Daniel P.'s] medically determinable impairments could reasonably be expected to cause the alleged symptoms." Dkt. 10-1 at 28. Next, he found that Daniel P.'s "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* And then, in accordance with his

obligations under the law, he "thoroughly explained why the record evidence did not fully support" Daniel P.'s subjective complaints. Dkt. No. 23 at 19. The ALJ's findings explicitly considered Daniel P.'s "alleged . . . combination of mental and physical limitations," "joint pain in his feet, back, and hands due to psoriatic arthritis," "difficulty with lifting, standing, walking, squatting, bending, kneeling, climbing stairs, reaching, and using his hands," "difficulty with concentration, completing tasks, and getting along with others," and "reported pain in his feet, ankles, back, and hands" that is "exacerbated by walking." Dkt. No. 10-1 at 27–28.

But, as the ALJ explained, "[d]espite these conditions, [Daniel P.] has been observed to have normal gait or denied experiencing gait instability" and has "also been observed to display normal strength, reflexes, sensation, and coordination." *Id.* at 28 (citing the record). Further, as to Daniel P.'s subjective mental symptoms, the ALJ described how Daniel P. "has received treatment for his mental health," "has reported some improved stability with medications with reduction of anger outbursts," has "participated in anger management," has been clinically observed to have "intact thought process[,] . . . intact immediate recall[,] . . . adequate concentration[,] . . . [and] good judgment and insight." *Id.* at 29 (citing the record). He then concluded: "Considering this evidence, I find the claimant's impairments are not as limiting as alleged." *Id.*

Undeterred, Daniel P. argues that the ALJ did not adequately explain how these aforementioned findings "translate into the ability to sustain work activity over an eight-hour day." *Id.* at 12. But the Court can follow the ALJ's logical bridge here too.

Daniel P. complained of joint pain and difficulties with ambulation, so in response the ALJ noted evidence of normal gait, strength, reflexes, sensation, and coordination.

Daniel P. complained of deficiencies in concentration and interpersonal communication, so in response the ALJ noted evidence of ongoing treatment for mental health, improvements in anger outbursts, and an intact thought process. And the ALJ also noted that Daniel P. denied "having [ever] been fired or laid off due to adverse social interactions." Dkt. No. 10-1 at 25. Thus, Daniel P.'s contention that the ALJ did not adequately walk him through an explanation of how the ALJ's findings "undermine[]" his subjective symptoms is unpersuasive. Dkt. No. 24 at 12–13. To an objective eye, the ALJ's report self-evidently does as much.

Next, Daniel P. recites a laundry list of concerning anecdotes that he contends the ALJ simply failed to consider, including "poor responses to treatment and medication," "a lot of rage coping with traffic," and the need to "pace himself when doing chores." Dkt. No. 24 at 11. But, again, simply because the ALJ did not address each piece of conflicting evidence in the record does not mean that he failed to consider it. And the Court finds that the ALJ sufficiently articulated his reasons for rejecting Daniel P.'s subjective symptom complaints. *Falco*, 27 F.3d at 163.

Daniel P.'s final argument is that "periods of [symptomatic] improvement do not necessarily undermine a claimant's overall limitations" when a claimant's "symptoms fluctuate," as he maintains his do. *See* Dkt. No. 24 at 12. But "the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time" to merit discarding evidence of improvement in various areas. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *see also Jones v. O'Malley*, 107 F.4th 489, 498 (5th Cir. 2024) (holding that a claimant's evidence of an "ailment [that] waxes and wanes in its manifestation of disabling symptoms" "must be 'such

that his ability to maintain employment was not adequately taken into account in [the ALJ's] RFC . . . determination'" (quoting *Perez v. Barnhart*, 415 F.3d 457, 464–65 (5th Cir. 2005))).

Daniel P.'s evidence does not meet this burden. To be sure, he highlights some evidence of symptom fluctuation in his brief, but as Judge Burch explained, that evidence "does not reflect that the variation is of such intensity that it prevents work for long periods" or (perhaps more importantly) "that the ALJ did not adequately account for such when evaluating the RFC." Dkt. No. 23 at 20–21 (citing Dkt. No. 11 at 19–20). To that latter end, she reminded Daniel P. that he did not testify at his hearing before the ALJ that his conditions "wax and wane." *Id.* (recounting Daniel P.'s hearing testimony).

And where a claimant has not testified that a condition "waxes and wanes," he has not "establish[ed] the factual predicate" necessary to require the ALJ to determine that the claimant can hold a job for a "significant period of time" amid fluctuating symptoms. *Renee F. v. O'Malley*, No. 4:22-CV-4237, 2024 WL 894964, at *7 (S.D. Tex. Mar. 1, 2024) (quoting *Watson v. Barnhart*, No. 288 F.3d 212, 217 (5th Cir. 2002)). Accordingly, Daniel P.'s argument that the ALJ's RFC did not properly account for the fluctuating nature of his symptoms, and over-relied on periods of demonstrated improvement, is unavailing. The Court finds that the ALJ properly evaluated Daniel P.'s subjective symptoms.

**4. Conclusion**

Having reviewed Judge Burch's FCR in light of Daniel P.'s objections, the Court accepts and adopts the FCR (Dkt. No. 23). The Court affirms the final adverse decision of the Commissioner and dismisses this case.

So ordered on September 10, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE